**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CARLOS E. ESPINOZA, # B-44844, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-639-MJR |
| | ) | |
| SALVADOR A. GODINEZ, | ) | |
| DANIEL CONN, LOUIS SHICKER, | ) | |
| NEDRA CHANDLER, DR. MESROBIAN, | ) | |
| DR. ALBERSE, RITA THOMPSON, | ) | |
| LT. JUSTICE, ALLAN MARTIN, | ) | |
| DR. DAVID, SHERRI LYNN, | ) | |
| THOMAS SPILLER, | ) | |
| CHRISTINE BROWN, VIPIN K. SHAH, | ) | |
| LT. HUNTER, UNKNOWN PARTIES, | ) | |
| and COLGAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He raises claims of deliberate indifference to a serious medical condition against Defendants in three state prisons where he has been confined (Dixon Correctional Center, Shawnee Correctional Center, and now Pinckneyville). Plaintiff is serving a 30-year sentence for murder as well as sentences on three other convictions. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

At the time Plaintiff's initial claims arose, he was incarcerated at Dixon. On June 1, 2009, he got into an altercation with another inmate and injured his knee. It was later determined that he had suffered a complete rupture of his ACL. On the way to segregation

following the incident, Plaintiff asked for medical attention for his injury, but Defendant Lt. Justice denied that request (Doc. 1, p. 9).  Other correctional officers continued to ignore his requests to see a doctor.[1]  Plaintiff was given only one Ibuprofen tablet, which did not relieve his pain.

On June 8, 2009, Defendant Colgan (a physician's assistant) ordered an x-ray of Plaintiff's knee.  She prescribed him some pain medication, but it was not consistently given to him.  His next health care visit was on June 29, 2009, at which time Defendant Thompson (a nurse) told him the x-ray was negative (Doc. 1, p. 11; Doc. 1-2, pp. 12-15).  Plaintiff pointed out the continued pain and swelling in his knee, and stated his belief that he had suffered tissue damage.  Defendant Thompson told Plaintiff he would not be given an MRI because of the high cost.  She continued his pain medication but said he could not have anything stronger.

On July 10, 2009, Plaintiff complained to Defendant Thompson that his pain medication had been discontinued.  He asked for crutches; she informed him that only the doctor could prescribe them, and he had a doctor's appointment for July 15.  He did not see the doctor on that date, however,

On July 16, 2009, Plaintiff again saw Defendant Colgan, who told him that his knee was swollen due to fluid retention.  She attempted to extract the fluid via a needle inserted under Plaintiff's kneecap.  After the fourth attempt, Plaintiff asked her to stop because he could not take the pain (Doc. 1, p. 12).  Defendant Colgan then concluded there had been no fluid in the knee.  Plaintiff continued to seek treatment from unspecified medical staff, and was told by a nurse that he was scheduled to see the doctor on August 11.

On July 24, 2009, Plaintiff spoke personally to Defendant Chandler (warden of Dixon), and explained that his requests for medical care had been continually ignored since his

---

[1] The complaint contains no indication that Plaintiff intended to bring suit against these unnamed officers.

June 1 injury.  He showed Defendant Chandler his swollen knee.  She "immediately" had Plaintiff seen by Defendant Dr. Mesrobian, who ordered another x-ray and prescribed crutches, based on his assessment that Plaintiff may have suffered bone trauma and tissue damage (Doc. 1, p. 14).

The new x-ray showed no broken bones.  Defendant Mesrobian placed Plaintiff in the infirmary for further observation on approximately July 28.  Another prison doctor, Defendant Alberse, opined that Plaintiff may have suffered cartilage and nerve damage; he told Plaintiff on August 3 that he would order an MRI.  Defendant Mesrobian took Plaintiff off the pain medication and put him on nerve medication.  On August 10, 2009, Defendant Mesrobian discharged Plaintiff from the infirmary.  He denied Plaintiff's request to be placed back on pain medication, and denied his request to be fed in his cell so he could avoid the painful walk to the chow hall (he was still on crutches).  Plaintiff was discharged and placed on a unit farthest from the chow hall.  An officer allowed him to be moved to segregation to shorten his walk.

On September 29, 2009 (nearly four months after the injury), Plaintiff was finally sent to the University of Illinois for his MRI.  This test showed he had a "complete rupture with scar tissue formation of the ACL" as well as contusions and mild ligament sprains (Doc. 1, p. 17; Doc. 1-2, pp. 16-17).  The orthopedic specialist ordered "extensive physical therapy" ("PT") for 7-8 weeks, to be followed up with a consultation regarding possible surgery.  Plaintiff did not make it to all his therapy sessions, however, because unidentified correctional officers[2] refused to take him from segregation (where he was again housed) to PT sessions (Doc. 1, p. 17).  He never had the follow-up surgical consultation.

On January 8, 2010, Plaintiff was transferred to Shawnee Correctional Center

---

[2] These correctional officers are not named as Defendants, nor does the complaint indicate that Plaintiff intended to bring claims against them.

("Shawnee"). He notes that unnamed prison officials at Dixon failed to put a "medical hold" on him so that the transfer would not interfere with his prescribed treatment.[3]

Soon after Plaintiff's arrival at Shawnee, he saw Defendant Dr. David, and requested the recommended physical therapy. However, Defendant David refused to order PT and would not return Plaintiff to the University of Illinois for any follow-up treatment or consultation. Between January 11, 2010, and October 31, 2012, Plaintiff continued to renew his requests for treatment, because he re-injured the knee, had problems walking, and still had occasional pain. However, Defendant David refused to send Plaintiff to an outside specialist or to provide any PT. Plaintiff filed grievances against Defendant David, the Shawnee nurses, and Defendant Lynn (the Shawnee Health Care Unit Administrator) for denying him proper medical care (Doc. 1, p. 19). Referring to an attached grievance summary, Plaintiff further claims that Defendant Lt. Hunter interfered with his supervised physical therapy treatment at Shawnee (Doc. 1, p. 38; Doc. 1-2, p. 43). This document indicates that Plaintiff had been scheduled by Defendant David to come to the Health Care Unit to be supervised by the nursing staff while he did his physical therapy exercises.

Plaintiff was transferred to Pinckneyville on an unspecified date. He has consulted Defendant Dr. Shah, asking to be sent to an outside specialist. However, Defendant Shah told Plaintiff there was nothing else he could do (Doc. 1, p. 20). Likewise, Plaintiff informed the Pinckneyville physical therapist (Unknown Party Defendant John Doe #2; see Doc. 1, p. 4)) of all the complications he continues to have from the knee injury; he also told Plaintiff there was nothing he could do. Plaintiff wrote to Health Care Unit Administrator Defendant Brown to complain about Defendant Shah's failure to give him proper medical care; Defendant

---

[3] Plaintiff does not say whether any of the named Defendants were responsible for this failure, nor does he indicate an intent to bring a claim against any other person in connection with the failure to place him under "medical hold."

Brown never responded.  A similar complaint to Defendant Spiller (Pinckneyville Warden) also failed to elicit any response.

According to Plaintiff, the "prolonged lack of treatment" for his knee injury has resulted in his inability to walk without pain and discomfort.  He fears that any time he is walking, his leg may "give out on him" at any moment (Doc. 1, p. 23).  The diagnosed rupture of his ACL has not been repaired, and he will require costly corrective surgery as well as medication and physical therapy.

Plaintiff asserts claims of deliberate indifference to his serious medical needs against the above Defendants.  His sole request for relief is for an award of compensatory damages (Doc. 1, pp. 24, 26, 41).  Besides the Defendants named above, he includes as parties the warden of Shawnee (Defendant Martin) and the Dixon Health Care Unit Administrator (Unknown Party Defendant John Doe #1).

Additionally, he brings claims against Defendants Godinez (IDOC Director), Conn (Executive of Wexford Health Sources, which provides health care to Illinois prisoners), Julie Hamos[4] (Director of the Illinois Department of Healthcare and Family Services), and Shicker (IDOC Medical Director).  Defendants Godinez and Hamos entered into a contract with Wexford Health Sources ("Wexford ") and Defendant Conn, under which adequate medical treatment was to be provided to Plaintiff and other inmates, in accordance with medically accepted standards of care.  Plaintiff did not receive proper care.  Defendant Godinez should have terminated the contract with Wexford.  Defendant Conn and his agents, employees, and/or subcontractors failed to give Plaintiff adequate medical care in compliance with the contract.

---

[4] Plaintiff omitted Defendant Julie Hamos from his case caption and initial list of Defendants (Doc. 1, pp. 1-5), but includes her in his summary of claims against the Defendants (Doc. 1, p. 27, 30-32).  Because it appears that Plaintiff intended to include Julie Hamos as a party, the Clerk shall be directed to add her as a Defendant.

Defendants Hamos and Shicker likewise failed to perform the requirements of the contract (Doc. 1, pp. 28-33).

**<u>Merits Review Pursuant to 28 U.S.C. § 1915A</u>**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide

the pro se action into the following counts.  The parties and the Court will use these designations

in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:**   Eighth Amendment deliberate indifference claim against Dixon Defendant Justice, for refusing to allow Plaintiff to obtain medical attention following his June 1, 2009, knee injury;

> **Count 2:**   Eighth Amendment deliberate indifference claim against Dixon medical provider Defendants Colgan, Thompson, Mesrobian, Alberse, and Unknown Health Care Unit Administrator (John Doe #1), for delaying and/or denying treatment for Plaintiff's knee injury, and failing to provide physical therapy recommended by the outside specialist;

> **Count 3:**   Eighth Amendment deliberate indifference claim against Dixon Defendant Warden Chandler, for failing to ensure that Plaintiff received proper medical treatment;

> **Count 4:**   Eighth Amendment deliberate indifference claim against Shawnee medical provider Defendants David and Lynn, for failing to provide treatment for Plaintiff's knee injury;

> **Count 5:**   Eighth Amendment deliberate indifference claim against Shawnee Defendant Warden Martin, for failing to ensure that Plaintiff received proper medical treatment;

> **Count 6:**   Eighth Amendment deliberate indifference claim against Shawnee Defendant Lt. Hunter, for interfering with Plaintiff's medical treatment;

> **Count 7:**  Eighth Amendment deliberate indifference claim against Pinckneyville medical provider Defendants Shah, Brown, and the Unknown Party Physical Therapist (John Doe #2) for failing to provide treatment for Plaintiff's knee injury;

> **Count 8:**  Eighth Amendment deliberate indifference claim against Pinckneyville Defendant Warden Spiller, for failing to ensure that Plaintiff received proper medical treatment;

> **Count 9:**  Eighth Amendment deliberate indifference claims against Defendants Godinez, Conn, Schicker, and Hamos, for failing to ensure that Plaintiff received proper medical treatment.

> Accepting Plaintiff's factual allegations as true, the Court finds that some of

Plaintiff's claims in Counts 1, 2, 4, and 7 shall proceed for further review. However, Counts 3, 5, 6, 8, and 9 fail to state a claim upon which relief may be granted, and shall be dismissed.

**Deliberate Indifference to a Serious Medical Condition**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth*, 532 F.3d at 680.

Here, Plaintiff describes a painful knee injury that indicated a need for prompt medical attention. Further, he was diagnosed with a ruptured ACL, and continued to experience symptoms long after the initial injury. Based on these facts, the complaint shows that he had a serious medical condition, and satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the various Defendants acted or failed to act with deliberate

indifference to a known risk of serious harm from Plaintiff's condition.

## Count 1 – Dixon Defendant Justice

After Plaintiff hurt his knee on June 1, 2009, he told the officer escorting him to segregation that he needed medical attention for the injury. That officer radioed his supervisor, Defendant Justice, to relay the request. Defendant Justice refused to allow Plaintiff to see a nurse or other medical provider for treatment. Plaintiff's description indicates that Defendant Justice was informed of Plaintiff's condition, yet took no action to mitigate the risk to his health. At this stage, Plaintiff has stated a deliberate indifference claim against Defendant Justice that merits further review.

## Count 2 – Dixon Medical Provider Defendants

According to the complaint, several of the Dixon Defendants provided treatment for Plaintiff's pain, and ordered diagnostic testing for his knee injury. Defendant Colgan ordered an x-ray on Plaintiff's first visit to her on June 8, and she prescribed pain medication for him. These actions do not suggest that she was deliberately indifferent to his condition; to the contrary, they represent appropriate steps to alleviate his pain and diagnose the nature of the injury. Plaintiff complains that he did not consistently receive the prescribed pain medication, but he does not attribute the interruption of his pain pills to Defendant Colgan (or to any other named Defendant). Defendant Colgan's failed attempt to drain fluid from Plaintiff's knee likewise does not evince deliberate indifference. Her unsuccessful treatment may have amounted to negligence or malpractice, but it was undertaken in order to alleviate Plaintiff's symptoms. As noted above, ineffective treatment, error, and malpractice will not support a constitutional claim for deliberate indifference to a serious medical need. *See Duckworth*, 532 F.3d at 679-80. Therefore, Plaintiff has not stated a claim upon which relief may be granted

against Defendant Colgan, based on this conduct.

Defendant Nurse Thompson relayed Plaintiff's x-ray results and extended his pain medication order.  She denied his request for stronger pain pills, but it is not clear whether she had the authority to give him anything more powerful.  She referred his request for crutches to the doctor.  She told Plaintiff that due to the expense, the prison would not order an MRI for him, but this later turned out to be untrue.  None of these actions suggest deliberate indifference on the part of Defendant Thompson.

However, the lapse of time between Plaintiff's visits to Defendant Thompson on June 29 and July 10, 2009, and his first doctor's appointment indicates that Defendant Thompson did not promptly refer Plaintiff to see the doctor.[5]  Her possible contribution to the delay in treating Plaintiff's June 1, 2009, injury could amount to deliberate indifference, thus this portion of Plaintiff's claim against Defendant Thompson shall receive further review.

As soon as Plaintiff saw Defendant Dr. Mesrobian, the doctor ordered a new x-ray and gave Plaintiff crutches.  He put Plaintiff in the infirmary for observation for several days.  He changed Plaintiff's medication after the other doctor suggested Plaintiff may have suffered nerve damage.  These measures do not suggest deliberate indifference to Plaintiff's medical condition.  Similarly, while Defendant Mesrobian denied Plaintiff's request to be fed in his cell, Plaintiff did not get his cell assignment (to the unit farthest from the chow hall) until later.  Defendant Mesrobian thus did not know at the time that his decision might mean that Plaintiff had to walk a great distance to get his meals; this undermines a claim of deliberate indifference against him for this action.

Reading the allegations liberally, it is possible that Defendant Mesrobian's denial

---

[5] An unidentified nurse told Plaintiff on July 23, 2009, that he was scheduled to see the doctor on August 11.  Due to the intervention of Defendant Chandler, Plaintiff was able to see the doctor soon after July 24 (See Count 3 below).

of Plaintiff's request for pain medication upon his discharge from the infirmary could support a deliberate indifference claim. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). This portion of Plaintiff's claim may therefore go forward against Defendant Mesrobian.

Defendant Alberse, of course, informed Plaintiff on August 3 that he would order an MRI on his knee. This test ultimately diagnosed Plaintiff's ruptured ACL. The test was not performed until September 29, 2009. The complaint is silent as to the reason for this further delay, or whether any of the named Defendants might have contributed to the delay in any fashion. None of the allegations involving Defendant Alberse suggest that he was deliberately indifferent to Plaintiff's serious medical condition.

Plaintiff appears to have received at least some of the physical therapy ordered by the orthopedic specialist pursuant to the September 29 MRI, because he states that he did not make it to "all" the sessions. However, he does not allege that any of the named Defendants were responsible for his inability to obtain the PT. Instead, he states that unnamed correctional officers refused to take him from segregation to the PT sessions. The Court makes no comment on whether the actions of those officers might have amounted to deliberate indifference, because Plaintiff did not include them as Defendants and did not indicate any intention to bring a claim against them.

As to the recommended surgical consultation that was to follow the course of PT, Plaintiff indicates that he was transferred to Shawnee in January 2010, before that consult could take place. The complaint does not link any of the named Dixon Defendants to the decision to transfer Plaintiff, the failure to put him under a medical hold, nor does it otherwise suggest that they were deliberately indifferent to Plaintiff's need for this follow-up consultation. Thus, Plaintiff has failed to state a deliberate indifference claim against Defendants Colgan, Thompson,

Mesrobian, or Alberse in connection with these matters.

Finally, Plaintiff includes the Unknown Health Care Unit Administrator at Dixon (John Doe #1) among the Defendants (Doc. 1, pp. 2, 36).  However, he never mentions this individual in the factual allegations that make up his statement of claim (Doc. 1, pp. 9-24).  He states only that this Defendant:

> Has the authority to enforce all institutional directives pertaining to medical care and is responsible that Plaintiff received [sic] proper and effective treatment for his injury.  By failing to perform her professional capacity Defendant violated Plaintiff's Eighth Amendment right.

(Doc. 1, p. 36).  This conclusory statement, devoid of any factual content as to what the Health Care Administrator did or failed to do with respect to Plaintiff's medical treatment, is insufficient to support a claim for deliberate indifference against her.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Again, a deliberate indifference claim will only lie if a prison official knew about the prisoner's serious medical need, yet failed to act to mitigate a substantial risk to the prisoner's health.  All that is required to satisfy the Eighth Amendment is a reasonable level of medical care to avert a substantial risk of harm; a prisoner's dissatisfaction with the quality of his treatment will not support a deliberate indifference claim.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Further, it appears that Plaintiff seeks to hold Defendant John Doe #1 liable merely because she held supervisory authority over the other medical-provider Defendants named above.  This he cannot do, because the doctrine of *respondeat superior* is not applicable to § 1983 actions.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  A Defendant may only be liable in a civil rights case if he or she was personally responsible for a constitutional violation.  Accordingly, the Unknown Health Care Unit Administrator at Dixon (John Doe #1) shall be dismissed from this action without prejudice.

To summarize, Plaintiff may proceed with his claims in **Count 2** against Dixon Defendant Thompson for delaying Plaintiff's referral to see a prison doctor, and against Dixon Defendant Mesrobian for denying pain-relieving medication to Plaintiff upon his discharge from the infirmary.  The claims against Defendants Colgan, Alberse, and the Unknown Health Care Unit Administrator (John Doe #1) shall be dismissed without prejudice.

The Court notes that Defendants Thompson and Mesrobian, as well as Defendant Justice in Count 1, are not located within the judicial district for the Southern District of Illinois. Plaintiff is advised that as this case progresses, the Court may find it appropriate to sever the claims against these Defendants and transfer that portion of the action to the district where they reside.  At this time, however, the surviving claims appear to be sufficiently factually linked such that they may remain together in this action.

**Dismissal of Count 3 – Dixon Defendant Chandler**

In similar fashion to the conclusory statements regarding the Unknown Dixon Health Care Administrator, Plaintiff asserts that Defendant Chandler, as the chief administrative officer at Dixon, was "ultimately responsible" for all decisions made by the medical staff, and was "responsible for providing treatment, care, and surgery for Plaintiff's injury[,]" but she denied him medical treatment (Doc. 1, p. 34).  As noted above, a warden cannot be held liable in a civil rights suit merely because she held supervisory authority over other officials who may have violated a prisoner's constitutional rights.  Further, Plaintiff's earlier factual statements negate any inference that Defendant Chandler was deliberately indifferent to his serious medical needs.  To the contrary, when he told her that his requests for medical care had been ignored, she intervened to ensure that he saw the doctor "immediately" (Doc. 1, p. 13).  As such, Plaintiff fails to state a deliberate indifference claim against her in **Count 3**.  Defendant Chandler shall be

dismissed from the action without prejudice.

**Count 4 – Shawnee Medical Provider Defendants David and Lynn**

Following Plaintiff's transfer to Shawnee, he informed Defendant Dr. David about his injury, and the specialist's recommendation for physical therapy and a surgical consultation. According to Plaintiff, Defendant David told him that he would not be sent back to the University of Illinois, and would not receive physical therapy. However, Defendant David did arrange for Plaintiff to go to the health care unit to do rehabilitative exercises under the supervision of the nurses there (it was this activity that Defendant Hunter allegedly interfered with). That prescription was clearly not Plaintiff's preferred treatment. Defendant David did not in fact refer Plaintiff for any follow-up consultation regarding possible surgery.

Doctors may exercise their medical judgment when deciding whether to refer a prisoner for specialist care, and a decision not to refer will constitute deliberate indifference only when the decision is "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014) (internal citations and quotation marks omitted); *Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008). At the same time, "Allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference." *Perez v. Fenoglio*, __ F.3d __, No. 12-3084, 2015 WL 4092294, at *5 (7th Cir. July 7, 2015); *see also Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (summary judgment inappropriate where prison doctor refused to follow specialists' instructions regarding inmate's treatment).

Plaintiff also complains that between January 2010 and October 2012, while he remained at Shawnee, he re-injured the knee and was still experiencing pain and difficulty walking. He made multiple requests for treatment over this nearly three-year period, directed to

Defendant David.  He also complained to Defendant Lynn (Health Care Administrator) about the deficiencies in his treatment and specifically Defendant David's refusal to follow the orders of the University of Illinois orthopedic specialist.

At this stage of the litigation, it cannot be determined whether Defendant David responded appropriately to Plaintiff's medical needs, or whether his conduct amounted to unconstitutional deliberate indifference.  The complaint suggests that Plaintiff also made Defendant Lynn aware of his medical needs and the lack of treatment, thus, the claim against her is not subject to dismissal at this time.  As such, Plaintiff may proceed with his deliberate indifference claims in **Count 4** against Defendants David and Lynn.

## Dismissal of Count 5 – Shawnee Defendant Martin

Plaintiff's claim against Defendant Warden Martin largely tracks his claim in Count 3 above against Defendant Chandler.  As noted in Count 3, there is no supervisory liability in a civil rights suit, thus Plaintiff fails to state a cognizable claim against Defendant Martin on the grounds that he was "ultimately responsible" for the safety of inmates in his institution (Doc. 1, p. 36).  The only factual allegation Plaintiff includes is that Defendant Martin denied his "grievance requesting to receive proper and effective medical treatment," presumably against Defendant David (Doc. 1 p. 37).

The denial of a grievance by a warden, who had no personal involvement in determining what medical care would be rendered to the prisoner, is not sufficient grounds to impose liability on the warden.  The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (a defendant must be "personally responsible for the deprivation of a

constitutional right" in order to be held liable).  A supervising official may incur liability for "deliberate, reckless indifference" only where he or she has purposefully ignored the misconduct of his/her subordinates.  *Sanville*, 266 F.3d at 740 (discussing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Plaintiff's factual allegations contain no indication that Defendant Martin knew the Shawnee medical providers were exhibiting deliberate indifference to his serious medical condition.  The denial of a single grievance does not suggest deliberate, reckless indifference to Plaintiff's situation.  For these reasons, **Count 5** against Defendant Martin shall be dismissed without prejudice.

### Dismissal of Count 6 – Shawnee Defendant Hunter

Plaintiff asserts that Defendant Hunter "deliberately interfere[d] in Plaintiff's medical treatment" (Doc. 1, p. 38).  For factual support, he refers to an attached grievance.  This document (actually the grievance officer's summary of the matter) does not describe Defendant Hunter's specific conduct, but indicates that there was a misunderstanding or dispute regarding Defendant David's orders for Plaintiff to be brought to the Health Care Unit ("HCU") to perform exercises under a nurse's supervision (Doc. 1, p. 43).  As a resolution to the grievance, Defendant Hunter was advised that Plaintiff was scheduled to visit the HCU, but he was not to do his exercises in the lobby or hallway area of the HCU.  Instead, he was to wait until a nurse became available to take him to a treatment room.  The complaint does not include any further factual allegations regarding this matter.

These facts do not support a deliberate indifference claim against Defendant Hunter.  **Count 6** shall accordingly be dismissed without prejudice at this time.

**Count 7 – Pinckneyville Medical Provider Defendants**

The complaint does not clearly state when Plaintiff was transferred to Pinckneyville, where Defendants Dr. Shah, Health Care Administrator Brown, and the Unknown Defendant Physical Therapist (John Doe #2) were the medical providers.  Based on Plaintiff's attached documents, Plaintiff was apparently still housed at Shawnee as late as March 2013 (Doc. 1-2, p. 19).   He arrived at Pinckneyville sometime before September 2014, when Defendant Brown noted that Plaintiff had been discharged by the physical therapist (presumably John Doe #2), who had concluded that Plaintiff would no longer benefit from his treatment (Doc. 1-2, p. 20).

Plaintiff complains that he requested Defendant Shah to send him to an outside specialist, but was refused.  He informed the Defendant Physical Therapist (John Doe #2) of his complications, but this Defendant told Plaintiff there was nothing he could do.  (The exhibit referenced above indicates that Plaintiff did, however, receive some treatment from the Defendant Physical Therapist (John Doe #2), which ceased when his "knee strength, range of motion, etc., was normal" (Doc. 1-2, p. 20)).  Plaintiff complained to Defendant Brown that Defendant Shah had failed to give him proper medical care, and she "ignored [his] complaints" (Doc. 1, p. 21).

While Plaintiff cannot dictate his own treatment, the complaint as a whole shows that he suffered a serious knee injury that ruptured his ACL.  According to the specialist's diagnosis and recommendations, the injury should have been treated with physical therapy, and may require surgery in order to restore Plaintiff to health.  Plaintiff received some PT, but evidently not to the degree that was recommended.  He has never received any follow-up consultation regarding the possible need for corrective surgery.  He is serving a lengthy sentence,

thus will not be able to avail himself of private medical care for many years.  Given this factual background, at this stage it would be inappropriate to dismiss the deliberate indifference claims against Plaintiff's current medical providers.  Thus, **Count 7** against Defendants Shah, Brown, and the Unknown Party Physical Therapist (John Doe #2) shall proceed for further review. Plaintiff shall note that before his claim can proceed against the John Doe #2 Defendant, he must identify this person by name.

The Court observes that Plaintiff has not requested any injunctive relief in connection with his claim.  Further factual development will be necessary to determine whether any of the Pinckneyville Defendants have exhibited deliberate indifference to Plaintiff's medical condition, as well as to determine whether any injunctive relief would be appropriate, should Plaintiff request it.

**Dismissal of Count 8 – Pinckneyville Defendant Spiller**

Plaintiff alleges merely that he wrote to Defendant Spiller, asking him to intervene so that Plaintiff would "receive the necessary treatment" for his condition (Doc. 1, p. 21).  Defendant Spiller never responded to the letter.

For the reasons discussed in connection with Count 5, these facts are not sufficient to support a deliberate indifference claim against Defendant Spiller.  Thus, **Count 8** shall be dismissed without prejudice.  However, Defendant Spiller shall remain in the action as a Defendant, in his official capacity only, as he appears to be the appropriate party to respond to any discovery requests that Plaintiff may make in order to identify John Doe #2 (the Pinckneyville Physical Therapist) by name.  *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555-56 (7th Cir. 1996) (collecting cases).

**Dismissal of Count 9 – Parties to Wexford Contract**

Throughout Plaintiff's description of his injury and subsequent efforts to obtain medical care at Dixon, Shawnee, and Pinckneyville, he does not mention having any correspondence or other contact with Defendants Godinez (IDOC Director), Conn (Wexford Health Sources Executive – "Wexford"), Schicker (IDOC Medical Director), or Hamos (Director of the Illinois Dept. of Healthcare and Family Services), regarding his medical condition or need for treatment. He makes only general claims that these Defendants had a duty to provide effective treatment in accordance with medically accepted standards of care and the contract between the IDOC, Department of Healthcare and Family Services, and Wexford, and that he did not receive proper care (Doc. 1, pp. 25-26). He focuses particular attention on the contract, part of which he includes as an exhibit (Doc. 1-2, pp. 21-38). He argues that these Defendants should be liable for damages because they were contractually obligated to make sure Plaintiff was given proper medical care, but he did not receive it (Doc. 1, pp. 28-33).

First, even if these Defendants ran afoul of their alleged contractual obligations, such a breach does not translate into a constitutional violation. Nor, as has earlier been discussed, can any of these Defendants be held liable for the alleged deliberate indifference of the prison employees who were under their supervision. Defendants Godinez, Conn, Schicker, and/or Hamos may only be liable if they were personally aware of a serious, objective risk to Plaintiff's health, but failed to take necessary action to mitigate that risk, or if they knowingly, purposefully ignored misconduct by their subordinates. The facts in the complaint suggest no such thing, therefore, Plaintiff fails to state a deliberate indifference claim against any of these Defendants.

Alternatively, a corporation such as Wexford (which employs the medical-

provider Defendants at the various prisons where Plaintiff was held) may be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).  However, none of the facts recited by Plaintiff support a policy or practice claim.

For these reasons, **Count 9** and Defendants Godinez, Conn, Schicker, and Hamos shall be dismissed without prejudice.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 2) is referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

## Disposition

The Clerk is **DIRECTED** to add **JULIE HAMOS** (Director of the Illinois Department of Healthcare and Family Services) as a Defendant.

**COUNTS 3, 5, 6, 8, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  Defendants **GODINEZ, CONN, SHICKER, CHANDLER, ALBERSE, MARTIN, HUNTER, COLGAN, HAMOS,** and **UNKNOWN PARTY DIXON HEALTH CARE ADMINISTRATOR (JOHN DOE #1)** are **DISMISSED** from this action without prejudice.

With reference to the remaining claims in **COUNTS 1, 2, 4, and 7**, the Clerk of

Court shall prepare for Defendants **MESROBIAN, THOMPSON, JUSTICE, DAVID, LYNN, SPILLER, BROWN,** and **SHAH**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendant Pinckneyville Physical Therapist (John Doe #2) until such time as Plaintiff has identified him by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.

Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 2).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 13, 2015**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court